**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                    )
BEVERLY DUNCAN,                     )
                                    )
                Plaintiff,          )
                                    )  Civil Action No. 04-1647 (EGS)
                v.                  )
                                    )
FRANCIS HARVEY, Secretary           )
of the Army,                        )
                                    )
                Defendant.          )
                                    )
```

**MEMORANDUM OPINION**

Plaintiff Beverly Duncan brings this action against Francis Harvey, in his official capacity as Secretary of the Army,[1] under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq* ("Title VII"). Plaintiff alleges that the Army failed to accommodate her disability when she was a medical technologist at the Walter Reed Army Medical Center. Plaintiff also claims that defendant engaged in race discrimination and retaliation. Currently pending before the Court is defendant's motion for summary judgment, which argues that plaintiff cannot establish a prima facie case of discrimination as to disability,

---

[1] Francis Harvey has been automatically substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d)(1).

race, or retaliation.  Defendant also asserts that plaintiff was
terminated for legitimate, non-discriminatory reasons.  Upon
consideration of the motion, the response and reply thereto, the
applicable law, and the entire record, the Court determines that
plaintiff has failed to put forth sufficient evidence to create a
genuine issue of fact as to disability discrimination, race
discriminations or retaliation.  Therefore, for the reasons
stated herein, defendant's motion for summary judgment is
**GRANTED**.

## BACKGROUND

Duncan, an African-American female, was employed as a
medical technologist at the Walter Reed Army Medical Center from
January 8, 1995 to July 2, 1999.  Compl. ¶ 5.  She worked in the
Department of Cellular Pathology.  *Id.*  Her job duties included
pipetting (transferring small amounts of liquid from one
container to another using a mechanical device), opening and
closing tubes, conducting inspections, performing chemical and
supply inventories, and updating quality control manuals.  *Id.* ¶
8.

On June 2, 1997, plaintiff developed a work-related injury
diagnosed as "bilateral tendinitis with a rotator cuff tear."
*Id.*  The injury was caused by the repetitive wrist motions
associated with pipetting, and resulted in "debilitating pain" in
plaintiff's back, shoulders, and arms.  *Id.*  On June 4, 1997, she

2

was placed on medical leave.  *Id.*  On November 18, 1997, plaintiff returned to her position in the Department of Cellular Pathology but was sent home after only six hours of work due to an inability to perform pipetting.  *Id.* ¶ 10.

On December 4, 1997, plaintiff was given a light duty assignment in the Department of Personnel working as a receptionist.  *Id.* ¶ 11.  This position ended on February 28, 1998, when the position was contracted out.  *Id.*  During her time at the Department of Personnel, plaintiff met with an Equal Employment Opportunity ("EEO") officer to complain about harassing behavior and discriminatory treatment by her supervisors.  *Id.* ¶ 13.  On January 22, 1998, plaintiff wrote a letter to her supervisors informing them of her meeting with the EEO officer.

On June 11, 1998, defendant offered plaintiff a position as a library technician.  *Id.* ¶ 14.  This position involved no pipetting, and the job description was approved by plaintiff's physician.  *See* Hr'g Tr., Def.'s Ex. 1, at 35 (Lichy Test.).  Despite her medical clearance, plaintiff rejected the job several months later claiming that the position would exacerbate her rotator cuff tear.  Compl. ¶ 14.

On February 11, 1999, Dr. Lichy, plaintiff's supervisor, sent her a warning letter which explained that she would be removed from her position unless she returned to duty immediately

3

or scheduled a meeting to discuss her medical limitations.  *See*
Lichy Aff. Attach., Def.'s Ex. 3, at 2 [hereinafter Lichy Warning
Letter].  In response to this letter, plaintiff scheduled a
meeting with Lichy on February 17, 1999.  Compl. ¶ 18.  During
this meeting, plaintiff "discussed her ability and desire to
return to the Department and how the Department's purchase of
certain automated equipment decreased or eliminated the
repetitive motions that she was unable to perform."  *Id.*  A
memorandum by Lichy notes that they "discussed her options of
returning to work in her previous capacity, accepting the offer
of an alternative job [as a library technician], pursuing medical
retirement, or resigning her position."  Pl.'s Ex. C at 2 (memo.
for record dated Feb. 17, 1999) [hereinafter Feb. 17 Memo.].

     After this meeting plaintiff wrote Lichy a letter which
included a list of requested accommodations.  Lichy Aff. Attach.
at 3-4 (letter from Duncan to Lichy dated Feb. 19, 1999)
[hereinafter Duncan Feb. Letter].  Plaintiff's proposed
accommodations included (1) restructuring her position to
eliminate pipetting, (2) creating or upgrading her to a
supervisory position, or (3) supporting her through a four-year
educational program.  *Id.*

     Rejecting these accommodations as unreasonable, Lichy
recommended plaintiff be removed from her position.  Compl. ¶ 19;
*see also* Pl.'s Ex. C at 7-8 (letter from Lichy to Duncan

4

proposing removal dated Mar. 30, 1999) [hereinafter Lichy Removal Letter].  A letter from Lichy to plaintiff explained that she had the right to oppose her recommended removal, and encouraged plaintiff to submit "any and all evidence you feel is relevant to the case."  *Id.* at 8.  On April 3, 1999, plaintiff responded to Lichy's proposed removal letter by requesting copies of all information that would be considered in the final decision-making process.  *See* Pl.'s Ex. C at 9 (letter from Duncan to Lichy dated Apr. 3, 1999).  She also attached a copy of her "latest medical update" to the letter.  *See generally* Pl.'s Ex. C at 10 (work capacity evaluation dated Feb. 11, 1999) [hereinafter Duncan Work Capacity Evaluation].  On April 22, 1999, plaintiff's attorney also responded to Lichy's proposed removal letter, and reiterated plaintiff's opposition to the proposed removal.  *See id.* at 14 (letter from David Branch, Esq. to Col. Becker dated Apr. 22, 1999).

On May 19, 1999, plaintiff filed a formal EEO complaint, claiming race discrimination, failure to accommodate, and retaliation.  She also argued that the library technician position was an unreasonable accommodation.  Compl. ¶ 21.

Plaintiff was formally removed from her position on July 2, 1999.  An agency memorandum written on June 25, 1999, explained that the basis of plaintiff's removal was her prolonged unavailability for duty and her ongoing inability to perform the

essential duties of her position including pipetting.  Pl.'s Ex.
C at 20-21 (letter from Col. Becker to Duncan).  The memorandum
concluded that because plaintiff "decline[d] a formal offer,
approved by [her] attending physicians, for reassignment to a
position in the AFIP library," her removal was justified.  *Id.* at
21.

On January 4, 2000, plaintiff filed a second formal EEO
complaint alleging that defendant discriminated against her on
the basis of race and disability when she was removed from her
position.  Compl. ¶ 26.  Plaintiff filed a complaint in this
Court on September 24, 2004, claiming disability discrimination,
race discrimination, and retaliation.  On May 25, 2006, defendant
moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted only if the moving party
has shown that there are no genuine issues of material fact and
that the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991
(D.C. Cir. 2002).  In determining whether a genuine issue of
material fact exists, the Court must view all facts in the light
most favorable to the non-moving party.  *See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The
non-moving party's opposition, however, must consist of more than

mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

**ANALYSIS**

**I.   Disability Discrimination**

In order to make out a prima facie case of disability discrimination under a disparate treatment theory, a plaintiff must show: (1) that she was an individual who had a disability within the meaning of the Rehabilitation Act; (2) that she was qualified for the position; and (3) that she suffered an adverse employment action because of her disability.  *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc); *Thompson v. Rice*, 422 F. Supp. 2d 158, 166 (D.D.C. 2006).  In its summary judgment motion, defendant argues that plaintiff is not disabled within the meaning of the Act and cannot show that she was qualified for her position.

**A.   Whether Plaintiff is Disabled**

Under the Rehabilitation Act, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  29 U.S.C. § 705(9)(B); *see also* 42 U.S.C. § 12102(2)(A) (identically defining

"disability" under the ADA).[2]  Thus, a plaintiff is disabled
under either statute if: (1) she suffers from an impairment; (2)
the impairment limits an activity that constitutes a major life
activity under the Act; and (3) the limitation is substantial.
*See Haynes v. Williams*, 392 F.3d 478, 481-82 (D.C. Cir. 2004).
It is the plaintiff's burden to prove that she is disabled.  *Id.*

Plaintiff argues that her bilateral tendinitis is an
impairment that substantially limits her in the major life
activity of performing manual tasks such as cooking and cleaning.
Tendinitis certainly qualifies as an impairment under the
statutes.  *See* 29 C.F.R. § 1630.2(h)(1).[3]  It is also clear that

---

[2]  The definition of disability also includes having "a
record of such an impairment," 42 U.S.C. § 12102(2)(B), or "being
regarded as having such an impairment," *id.* § 12102(2)(C).  In
addition to allegedly being disabled, plaintiff argues that
defendant regarded her as disabled.  The Court need not analyze
this prong of the disability standard because plaintiff satisfies
the principle definition.  It is unlikely, however, that
plaintiff would succeed on her claim that defendant "regarded"
her as disabled because it proposed the idea of disability
retirement.  *See Dabney v. Ohio Dep't of Admin. Servs.*, 2006 WL
745176, at *11 (S.D. Ohio Mar. 26, 2006) ("That an employer
believes that an employee may qualify for disability benefits
under a standard that is narrower than the Rehabilitation Act's
definition of 'disability' is not evidence that the employee is
'regarded as disabled' under the Act."(quoting *Hoskins v. Oakland
County Sheriff's Dep't*, 44 F. Supp. 2d 882, 891 (E.D. Mich.
1999), *aff'd*, 227 F.3d 719 (6th Cir. 2000))).

[3]  While the persuasive authority of the EEOC's regulations
is unclear, the Supreme Court has assumed without deciding that
the regulations are reasonable.  *See, e.g., Toyota Motor Mfg. v.
Williams*, 534 U.S. 184, 194 (2002); *Thompson v. Rice*, 422 F.
Supp. 2d 158, 167 n.8 (D.D.C. 2006).  Neither party in this case
challenges the applicability of the EEOC regulations.

performing manual tasks in the household constitutes a major life activity.  *See* 45 C.F.R. § 84.3(j)(2)(ii); *see also Toyota*, 534 U.S. at 201 ("[H]ousehold chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should have been part of the assessment of whether respondent was substantially limited in performing manual tasks.").  The dispositive question, therefore, is whether plaintiff was *substantially limited* in her ability to perform household manual tasks.

"[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Toyota*, 534 U.S. at 198; *see* 29 C.F.R. § 1630.2(j)(1)(i)-(ii).  In determining whether an individual is substantially limited in a major life activity, the regulations state that courts should consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of the impairment.  29 C.F.R. § 1630.2(j)(2).  In *Toyota*, the Supreme Court emphasized that to qualify as substantially limiting an "impairment's impact must be permanent or long-term."  534 U.S. at 198.

Based on this standard and plaintiff's evidence, the Court concludes that there is sufficient evidence to demonstrate that

plaintiff's bilateral tendinitis substantially limited her ability to perform household chores from 1997 until 1999.  *See* Hr'g Tr. at 146 (Duncan Test.) ("[I]t got to the point I couldn't pick up anything.  I couldn't pick up a pot or a pan or anything hardly at all, it just hurt so bad."); Beverly Duncan Dep., Def.'s Ex. 2, at 26 ("From '97 to definitely a year and half to two – almost a year-and-a-half I didn't do much – do any family cooking."); Lichy Aff. Attach. at 13 (letter from Dr. Lynne Diggs, M.D. to U.S. Dept. of Labor dated Feb. 24, 1998) ("Household chores like dishwashing and folding laundry exacerbate her pain and numbness in the forearms.").  However, because there is evidence that plaintiff was able to resume her household chores in 1999, *see, e.g.,* Duncan Dep. at 27 ("Q: So by 1999 would you have returned to cooking? – A: I started doing some cooking."), the Court must decide whether plaintiff's inability to perform household manual tasks for two years is sufficiently "long-term."  *See Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468 (4th Cir. 2002) ("An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time."); *see also* 29 C.F.R. Pt. 1630 App., § 1630(j) (noting that "temporary, non-chronic impairments of short duration, with little or no long-term or permanent impact, are usually not disabilities").

Courts are seemingly unanimous in the view that impairments whose effects last less than one year are insufficient to demonstrate a substantial limitation on a major life activity. *See, e.g., Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006) (surgery requiring nine-month leave of absence insufficient to show long-term impairment); *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999) (injury lasting three and one-half months "too short in duration . . . to be substantially limiting"); *Thompson v. Rice*, 422 F. Supp. 2d 158, 167 (D.D.C. 2006) (brain hemorrhage requiring two-day hospital stay and six weeks of sick leave of temporary duration). No case, however, has directly addressed whether an impairment whose effects substantially limited a major life activity for two years is sufficiently "long-term."

Viewing the evidence in plaintiff's favor, the Court concludes that plaintiff's medical records, prior testimony, and affidavits create an issue of material fact as to whether the effects of her impairment were substantially limiting. *See, e.g.,* Lichy Aff. Attach. at 2 (medical report dated Feb. 28, 1998) (noting "chronic recurring pain" as a "permanent effect" of plaintiff's bilateral tendinitis); *see also Johnson v. Billington*, 404 F. Supp. 2d 157, 166-67 (D.D.C. 2005) (rejecting defendant's assertion that plaintiff's disability was only temporary because there was "ample evidence in the record to

suggest that the plaintiff's bipolar disorder interfered with his life with *some* regularity").  Because plaintiff can demonstrate that her impairment meets the "substantially limiting" standard, she is disabled within the meaning of the ADA and Rehabilitation Act.

**B.  Whether Plaintiff was Qualified for Her Position.**

Because this Court finds that plaintiff was disabled, the Court must now determine whether plaintiff was qualified for her position as a medical technologist.  To be a "qualified individual with a disability," plaintiff must establish that she was able to perform the "essential functions of [her] position with or without reasonable accommodation."  42 U.S.C. § 12111(8).  Defendant argues that plaintiff is not a qualified individual, as she was unable to engage in pipetting – an essential function of her position – with or without reasonable accommodation.

**1.   Pipetting as an Essential Function**

First, the Court must determine whether pipetting was an essential function of plaintiff's position.  Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  In determining whether a task is an essential function, "consideration shall be given to the employer's judgment as to what functions of a job are essential" as well as

to the employer's "written description" of the job.  42 U.S.C. §
12111(8).

Plaintiff's supervisor testified that plaintiff's position
required frequent pipetting, which accounted for approximately
eighty percent of her duties.  Hr'g Tr. at 10-12 (Lichy Test.).
Plaintiff's job description also indicates that pipetting
comprised about forty percent of her work.  Pl.'s Ex. D at 2.
Plaintiff, herself, conceded that she spent more than fifty
percent of each day pipetting.  Hr'g Tr. at 141 (Duncan Test.);
*see also id.* at 145 ("A large portion of my time was spent
pipetting."); Lichy Aff. Attach. at 3 (Duncan Feb. Letter) ("My
duties extend beyond pipetting although pipetting is an essential
part of the position.").  Based on this evidence there can be no
genuine issue of fact as to whether pipetting was an essential
function of plaintiff's position.

### 2.   Ability to Perform Pipetting With or Without Reasonable Accommodation

The critical issue, then, is whether plaintiff was able to
perform pipetting "with or without reasonable accommodation." 42
U.S.C. § 12111(8).  Plaintiff claims that with the assistance of
an electronic pipette, hand brace, and robotics she would have
been able to engage in pipetting.[4]  *See* Hr'g Tr. at 193 (Duncan

---

[4]  If these devices had enabled plaintiff to engage in
pipetting they would have been a reasonable accommodation.  *See*
42 U.S.C. § 12111(9)(B) (listing the acquisition of equipment or
devices as a form of reasonable accommodation).

13

Test.).  Defendant argues that there is no evidence to support plaintiff's assertion that she could engage in pipetting either with or without the requested accommodation.

Both plaintiff and defendant's medical evidence indicates that plaintiff was unable to engage in pipetting at the time she was removed from her position.  The last medical report plaintiff submitted to defendant indicates that she could engage in "no repetitive movements involving wrists, arms."  Pl.'s Ex. C at 10 (Duncan Work Capacity Evaluation).  Plaintiff's doctor qualified this restriction by noting that her "condition appears to have surfaced as a result of repetitive motion from her previous work."  *Id.*  The doctor also noted that it was "unknown" how long this work-related restriction would apply.  *Id.*

An electronic pipette and robotic equipment would not have accommodated these medical restrictions.  Lichy testified that these devices only reduced the amount of pipetting in plaintiff's position by fifty percent.  *See* Hr'g Tr. at 198 (Lichy Test.). Plaintiff, herself, admitted that the requested equipment did not eliminate the need for pipetting.  *See id.* at 196 (Duncan Test.) (Q: "Is it your belief that these instruments eliminated pipetting altogether? - A: No.  Not at all.").  Even with these instruments, then, plaintiff would have had to engage in routine repetitive motions in direct contravention of her medical restrictions.  *See* Hr'g Tr. at 111 (Col. Becker Test.) ("[T]hese

14

instruments would have assisted Ms. Duncan in being able to automate one aspect of the assays but not enough to be able to get around the limitations that had been imposed medically on Ms. Duncan's work performance.").

Because the undisputed medical evidence shows that plaintiff could engage in "no repetitive movements" at the time of her removal, *see* Pl.'s Ex. C at 10, plaintiff's mere self-serving statement that she believed she could have performed pipetting with the requested equipment is insufficient to create a genuine issue of fact.  *See Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993) ("mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment"); *Keeley v. Small*, 391 F. Supp. 2d 30, 49 (D.D.C. 2005) ("plaintiff's unsubstantiated and self-serving statement . . . is not sufficient to create a genuine issue as to material fact").  The Court, therefore, finds that plaintiff was not able to perform the essential function of pipetting with or without the requested instruments.

### 3.  Other Reasonable Accommodations

"When a disabled person is not able to perform the essential functions of the job, a court must consider whether any reasonable accommodation by the employer would enable the disabled person to perform those functions."  *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996).  For instance, in

15

lieu of acquiring equipment or devices, an employer's reasonable accommodation may include restructuring the disabled employee's position or reassignment to a vacant position.  42 U.S.C. § 12111(9)(B).  Plaintiff requested defendant accommodate her impairment by: (1) restructuring her position to eliminate pipetting; (2) promoting her to a supervisory position; or (3) paying for her to pursue a doctoral degree for four to five years.  *See generally* Lichy Aff. Attach. at 3-4 (Duncan Feb. Letter).  Upon defendant's motion for summary judgment, plaintiff's burden is to show that the requested accommodation is "reasonable on its face, i.e., ordinarily or in the run of cases."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Plaintiff fails to meet this burden.

First, the ADA "does not relieve a disabled employee or applicant from the obligation to perform the essential functions of [a] job."  29 C.F.R. § 1630, App.  Therefore, plaintiff's request that defendant restructure her job to eliminate pipetting was not reasonable.  *See, e.g., Cochrum*, 102 F.3d at 913 ("reasonable accommodation does not encompass reallocation of essential job functions"); *Benson v. Northwest Airlines*, 62 F.3d 1108, 1114 (8th Cir. 1995) ("[defendant] need not eliminate an essential job function to accommodate [plaintiff]").  Nor was it reasonable for plaintiff to request that defendant promote her to a supervisory position.  *See Aka v. Washington Hosp. Ctr.*, 156

F.3d 1284, 1305 (D.C. Cir. 1998)(en banc)("employers are not required to 'bump' an employee, or to create a new position"). Finally, plaintiff's request that defendant pay for her to attend graduate school for four to five years, is patently unreasonable. *See* 42 U.S.C. § 12111(10) (discussing undue hardship). Therefore, defendant had no duty to meet these requested accommodations.

Because plaintiff could not perform the essential functions of her job with or without reasonable accommodation, she is not a "qualified individual with a disability," 42 U.S.C. § 12111(8). Therefore, defendant's motion for summary judgment is granted as to plaintiff's disability discrimination claims.

## II.   **Race Discrimination**

Defendant also moves to dismiss plaintiff's claim of race discrimination.  "[A] plaintiff makes out a prima facie case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Mastro v. Potomac Electric Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006)(quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).  The third prong is met if the plaintiff establishes that she was treated differently from a similarly situated employee who is not part of the protected class. *Id.*

Plaintiff, an African-American woman, claims that she was treated differently than a Caucasian co-worker, Dr. Amy Krafft. Compl. ¶ 25.  She argues that defendant's decision to accommodate Krafft, and its failure to accommodate her, gives rise to an inference of discrimination.  *Id.*

"[T]o be deemed 'similarly-situated', the individual with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Phillips v. Holladay Prop. Servs.*, 937 F. Supp. 32, 37 (D.D.C. 1996) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)).  Plaintiff failed to establish that Krafft is a similarly situated employee.

While both employees took medical leave – Krafft for depression and plaintiff for bilateral tendinitis – there are significant "differentiating or mitigating circumstances."  *See id.*  For instance, while plaintiff's medical condition kept her out of work for *twenty-two months*, Dr. Krafft's condition only caused her to miss *seven weeks* of work.  Lichy Aff. ¶ 7. Moreover, after her seven weeks of leave, Krafft returned to work full-time in her previous position.  *Id.*  By contrast, after missing twenty-two months of work, plaintiff remained unable to

18

resume pipetting, an essential function of her job.  *Id.* ¶ 9.
Based on the significant differences in the duration, severity,
and long term work-related effects of their illnesses, plaintiff
and Krafft are not similarly situated.  Plaintiff, therefore, has
failed to establish a prima facie case of race discrimination.

Even assuming, however, that plaintiff established a prima
facie case, defendant articulated a "legitimate nondiscriminatory
reason" for removing plaintiff – her unavailability for duty and
inability to perform pipetting.  *McDonnell Douglas Corp. v.
Green*, 411 U.S. 792, 802 (1973); *see generally* Pl.'s Ex. C at 20
(letter to Duncan from Col. Becker dated June 25, 1999).  Because
defendant's burden is merely one of production, Lichy's affidavit
stating that "Duncan had not been available to do her assigned
job as a medical technologist for 22 months" is sufficient for
defendant to meet its burden.  *See Mastro*, 447 F.3d at 854 .

"[T]o survive summary judgment the plaintiff must show that
'a reasonable jury could conclude from all of the evidence that
the adverse employment decision was made for a discriminatory
reason.'" *Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006)
(quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).
Plaintiff, however, has produced no evidence which would support
her claim that defendant's stated reasons for terminating her
were pretextual.  *See Mastro*, 447 F.3d at 855.  Consequently,

defendant's request for summary judgment as to plaintiff's race discrimination claim is granted.

## III. **Retaliation**

Defendant also moves for summary judgment on plaintiff's claim for retaliation.  To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection between the two exists.  *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).  To demonstrate a causal connection between the protected activity and the adverse action, Plaintiff must show that defendant "had knowledge of [her] protected activity, and that the adverse personnel action took place shortly after that activity."  *Id.* (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).

### A.   **Meeting with EEO Officer**

Plaintiff claims that her removal was in retaliation for a meeting with an EEO officer on January 13, 1998.  Compl. ¶ 13. This claim must fail, however, because no adverse personnel action took place "shortly after" the protected activity.  *See Carney v. American* Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). Plaintiff was not removed from her position until March 1999. Compl. ¶ 19.  This thirteen-month lapse is too long to permit an

inference of retaliatory intent.  *See, e.g., Devera v. Adams*, 874 F. Supp. 17, 21 (D.D.C. 1995) (eight months does not suggest causal link).

### B.  Meeting with Lichy

In plaintiff's reply to defendant's motion for summary judgment, plaintiff, for the first time, raised an additional retaliation claim.  *See* Pl.'s Opp. to Def.'s Mot. for Summ. J. at 20.  Plaintiff now claims that she engaged in protected activity when she met with her supervisor on February 17, 1999.  Because plaintiff waited until the summary judgment stage to raise the claim, this Court need not consider plaintiff's argument.  *See Washington v. Thurgood Marshall Acad.*, 2006 WL 1722332, at *17-18 (D.D.C. June 19, 2006) (dismissing a sex discrimination claim raised for the first time in plaintiff's opposition to defendant's motion for summary judgment); *Armstrong v. Reno*, 172 F. Supp. 2d 11, 24 (D.D.C. 2001) (dismissing a claim of constructive discharge raised for the first time in plaintiff's opposition to defendant's motion for summary judgment).  However, even if the Court considered the merits of the claim, it would be dismissed as plaintiff failed to establish a prima facie case of retaliation.[5]

---

[5] Assuming that plaintiff's meeting with Lichy was protected activity – a claim which defendant disputes – the causal connection between plaintiff's protected activity and her subsequent removal is simply too tenuous to establish the requisite causality. *See Holbrook*, 196 F.3d at 263.

Moreover, even if plaintiff established a prima facie case as to either claim of retaliation, defendant put forth "legitimate, nondiscriminatory reason[s] for the alleged acts of reprisal." *See Moorhouse v. Billington*, 2006 WL 3747311, at *5 (D.D.C. Dec. 18, 2006).  In order to survive summary judgment, plaintiff must show by a preponderance of the evidence that defendant's asserted legitimate reason is "pretext" for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  Because plaintiff failed to put forth any evidence from which a jury could conclude that defendant's reasons for dismissal were pretext for retaliation, defendant's request for summary judgment is granted. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006).

### CONCLUSION

Because plaintiff failed to satisfy her burden at summary judgment to demonstrate that she can establish the prima facie elements of her disability discrimination, race discrimination, and retaliation claims, defendant's motion for summary judgment is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 28, 2007**

22